UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISRTICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. | ) | |
| RICHARD J. CARMEL, and | ) | |
| THE STATE OF ILLINOIS, ex rel. | ) | |
| RICHARD J. CARMEL, | ) | Case No. 13 CV 5930 |
| | ) | Judge Elaine E. Bucklo |
| Plaintiff-Relator, | ) | Magistrate Judge Gilbert |
| | ) | |
| vs. | ) | |
| | ) | |
| CVS CAREMARK CORPORATION, | ) | |
| d/b/a CVS PHARMACY; SILVERSCRIPT, | ) | |
| and LONGS DRUG STORES, | ) | |
| a foreign corporation | ) | |
| | ) | |
| Defendants | ) | |

AMENDED COMPLAINT FOR VIOLATION OF FALSE CLAIMS ACT (QUI TAM). ANTI-KICKBACK STATUTE, CIVIL MONETARY PENALTIES AND THE MEDICAID FALSE CLAIMS ACT AND DEMAND FOR JURY TRIAL

Plaintiff-Relator, Richard J Carmel, for himself and on behalf of the United States of America and the State of Illinois, by and through his attorneys, TOUHY, TOUHY & BUEHLER, hereby files this Amended Complaint under the False Claims Act (sometimes, the "FCA"), 31 U.S.C. § 3729, et seq., (sometimes, the "Anti-kickback Statute," see 42 U.S.C. §§ 1320a-7(b)(7) and 1320a-7b(b)), the Civil Monetary Penalties Law (sometimes, the "CMPL", 42 U.S.C. §§ 1320a-7(b)(7) and 1320a-7a), and the Illinois Medicaid False Claims Act, MCL 400.601 et seq. (collectively, the "Acts") and states as follows:

JURISDICTION AND VENUE

This action arises under the Acts and the common law to recover treble damages and civil penalties on behalf of the United States of America and the State of Illinois arising out of the Defendants' submission of fraudulent claims to the United States and the State of Illinois Governments through the federal Medicare and the federal and state Medicaid programs.

1

1.     31 U.S.C. § 3732 provides that this Court has exclusive jurisdiction over actions brought under the federal FCA and concurrent jurisdiction over state claims arising from the transactions giving rise to the claims under such Act. In addition, jurisdiction over this action is conferred on the Court by 28 U.S.C. § 1345 and 28 U.S.C. § 1331 because the civil action arises under the laws of the United States. Further, the Court has jurisdiction under 31 U.S.C. § 3732(b) for any action brought under the laws of any state for the recovery of funds paid by state or local government if the action arises from the same transaction or occurrence as an action brought under § 3732.

2.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, dealing with venue generally, and specifically under § 3732(a) of the False Claims Act which provides that, "Any action under section 3730 may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." The conduct which is the subject of this action occurred in Northern Illinois, including but not limited to Highland Park, in the State of Illinois, within this judicial district, as well as elsewhere throughout the United States.

3.     Under the False Claim Act, this Complaint is to be filed in-camera and remain under seal for a period of at least sixty (60) days, and under the Medicaid False Claims Act the complaint is to be filed in-camera and remain under seal for a period of at least sixty (60) days and shall not be served on defendants until the Court so orders. The federal government may elect to intervene and proceed with the action within sixty (60) days after it receives both the Complaint and the material evidence and the state government may elect to intervene and proceed with the action within sixty (60) days after it receives both the Complaint and the material evidence.

4.     As required under § 3730(a)(2) of the FCA, Relator has provided to the Attorney General of the United States and to the United States Attorney for the Northern District

of Illinois, prior to the filing of this Complaint, statements of all material evidence and information related to the Complaint (the "Disclosure Statements"). Relator has also provided the Attorney General of the State of Illinois a copy of the Evidentiary Disclosure.

5.      Relator is the original source of the information of the allegations contained in this Complaint.

6.      This is also an action to recover damages, civil penalties, and exclusion from all federal health care programs pursuant to the Anti-kickback Statute.

7.      This is also an action to obtain damages, assessments, civil monetary penalties, and exclusion from all federal healthcare programs pursuant to the CMPL.

<u>PARTIES</u>

8.      Relator Richard J. Carmel is a citizen and resident of the State of Illinois, United States of America, and brings this action on behalf of the United States of America and the State of Illinois.

9.      Defendant CVS CAREMARK CORPORATION, d/b/a CVS PHARMACY (hereinafter sometimes "CVS) and LONGS DRUG STORES (hereafter "CVS CAREMARK"), is a foreign corporation and is for all times relevant to this Complaint a Delaware corporation doing business throughout the United States, including well more than 248 business locations in the State of Illinois, of which approximately 74 business locations are situated in the Chicago area.

10.     Defendant SILVERSCRIPT INSURANCE COMPANY, d/b/a SILVER SCRIPT INSURANCE (hereinafter "SILVERSCRIPT"), is a foreign corporation and is for all times relevant to this Complaint a Tennessee Corporation wholly-owned by CVS CAREMARK, and doing business throughout the United States, including the State of Illinois, offering prescription-drug coverage insurance as a Medicare-approved Part D sponsor.

3

GENERAL ALLEGATIONS

11.     Defendant CVS CAREMARK was founded in 1963 and grew to a chain of more than 7,000 drugstores by January, 2013. Defendant has three operating divisions: CVS/Pharmacy; Caremark Pharmacy Services, which is a pharmacy benefit management company; and MinuteClinic, a walk-in clinic that operates within CVS/Pharmacy stores. Defendant CVS CAREMARK also has a wholly owned subsidiary, Defendant SILVERSCRIPT, which offers health insurance throughout all 50 states, including Medicare Part D prescription insurance coverage.

12.     CVS/Pharmacy is a nationwide chain with stores in 42 states, ranging from Illinois to Puerto Rico, Virginia, Louisiana, Missouri, California, Hawaii, and elsewhere.

13.     According to the CVS website, as of October, 2014, there are 74 CVS PHARMACY stores in Chicago, Illinois area and 174 additional stores located across the rest of Illinois.

14.     Providers of pharmacy services compete for the opportunity to fill customers' prescriptions. Pharmacies such as CVS, Walgreen Co. (hereinafter, "Walgreens") and Target Corporation (hereinafter, "Target") provide discounts as incentives for customers to bring prescriptions to such pharmacies for fulfillment, to transfer prescriptions from other pharmacies for fulfillment, and to continue to have such prescriptions fulfilled at such pharmacies, with the goal that the pharmacy providing the discount will obtain and retain the customers' business. For example, Walgreens, a competitor of CVS, has a Prescription Savings Club (hereinafter, "Walgreens Club") offering its members savings on the purchase of prescription drugs. For further example, Target, also a competitor of CVS, has a 5 % REDcard Discount Program and a Target Pharmacy Rewards Program (collectively, the "Target Discount Programs") offering enrollees discounts and other benefits in return for pharmacy purchases. However, the Walgreens Club and the Target Discount Programs deny membership to Medicare and Medicaid participants.

15.     Pharmacies also have affiliated insurance companies that encourage members of

4

their insurance plans to patronize affiliated pharmacies by providing lower prices or greater benefits for drugs purchased at such pharmacies than at nonaffiliated pharmacies.

16.     SILVERSCRIPT conspired with CVS CAREMARK to attract customers to the exclusion of Walgreens, Target and other pharmacies by offering customers insured by SILVERSCRIPT special benefits for drugs purchased at CVS CAREMARK's CVS/Pharmacy division than at other pharmacies. In furtherance of such conspiracy, CVS CAREMARK provided customers discounts at its CVS/Pharmacy division by providing them with single "points" for each prescription filled, and then providing customers a five dollar discount coupon for each 10 prescriptions filled or refilled, for use in purchase of goods, wares and merchandise at CVS/pharmacy stores. Conversely, CVS's competitors Walgreens and target expressly denied participation by Medicare and Medicaid recipients in the Walgreens Club and Target Discount Clubs.

17.     Despite Defendant CVS's knowledge of mandatory reporting requirements with regard to federally funded medical services provided through its CVS PHARMACY, INC., division, CVS gave Medicare and Medicaid recipients discounts on goods, wares and merchandise it sold at its stores as an inducement to patronize CVS.

18.     Defendant CVS/CAREMARK, through its CVS/Pharmacy division, also failed to disclose to Medicare or Medicaid recipients any requirement on the recipients' part to report such discounts to the federal government.

19.     Defendant CVS CAREMARK allowed Medicare and Medicaid recipients to benefit from discounts at the expense of Medicare and Medicaid.

20.     Defendant CVS CAREMARK, through its CVS/Pharmacy division, failed to inform its customers, including Relator herein, of the prohibition against Medicare and Medicaid recipients' use of its discount coupons, or of any requirement on their part to report such

discounts to the federal government.

21.     In addition, Defendant CVS CAREMARK, through its CVS/Pharmacy division, distributed discount coupons that on their faces did not restrict Medicare and Medicaid recipients from gaining the benefit of a coupon at the expense of Medicare and Medicaid.

22.     Defendant CVS CAREMARK's prescription drug discounts, provided as aforesaid through its CVS/Pharmacy division, on their face and/or in practice remunerated Medicare and Medicaid recipients as an inducement for purchasing prescriptions drugs, without passing that remuneration on to Medicare and Medicaid.

23.     Such remuneration also acted as an incentive for the beneficiaries of the federal health care programs to purchase their prescription drugs from Defendant CVS CAREMARK, through its CVS/Pharmacy division, in particular.

24.     Such remuneration also acted as an incentive for those beneficiaries of the federal health care programs who were insured by SILVERSCRIPT to continue to purchase their Medicare Part D insurance coverage from SILVERSCRIPT.

25.     DEFENDANT CVS CAREMARK, through its CVS/Pharmacy division, with the complicity of Defendant SILVERSCRIPT, concomitantly contravened the False Claims Act, 31 U.S.C. § 3729, by certifying, or implicitly certifying, that it was in compliance with Medicare laws, Medicaid laws, the Anti-kickback Statute, and the CMPL; and violated the MFCA by certifying it was in compliance with Medicaid laws, thereby causing the federal and state governments to pay false claims that they otherwise would not have paid.

### I. FRAUDULENT CONDUCT IN VIOLATION OF THE ANTI-KICKBACK STATUTE AND THE CIVIL MONETARY PENALTIES LAW

26.     The aforesaid conduct is fraudulent, in contravention of the provisions of the Anti-kickback Statute and the CMPL, and arises from the provision of improper remuneration to Medicare

and Medicaid recipients in the form of Defendant CVS CAREMARK's CVS/Pharmacy's discount coupons.

27.    Through its CVS/Pharmacy division, Defendant CVS CAREMARK used the remuneration to induce recipients of federal health care benefits to purchase prescriptions from Defendant CVS CAREMARK's CVS/Pharmacy division, in particular in order to obtain additional, unrelated general goods, wares and merchandise (hereinafter called "Sundries") at the expense of Medicare and Medicaid.

28.    The brochures and management practices of Defendant CVS CAREMARK's CVS/Pharmacy division demonstrate that all customers, including Medicare and Medicaid recipients, were to benefit from these discount coupons.

29.    Through its CVS/Pharmacy division, Defendant CVS CAREMARK used the discount coupons as incentives to attract the business of Medicare and Medicaid recipients.

30.    CVS/CAREMARK did not report the discounts, directly or through its CVS/Pharmacy division, to the federal government or inform the recipients of any duty to report the discounts to the federal government.

31.    CVS/CAREMARK did not itself or through its CVS/Pharmacy division, monitor, or create a monitoring process, to ensure that the discount coupons were not used by recipients of federal health care benefits.

32.    In failing to take the appropriate steps to pass the discount on to Medicare and Medicaid, and in using the discounts as incentives for recipients to obtain services from CVS/CAREMARK's CVS/Pharmacy division in particular, Defendant CVS CAREMARK violated the Anti-kickback Statute, the CMPL, the False Claims Act and the MFCA.

33.    Defendant CVS CAREMARK through its CVS/Pharmacy division, specifically implemented the following discount programs:

A. CVS/pharmacy Fill 10 prescriptions Earn $5 extrabucks® rewards Brochure. The Brochure describes, in part: Now, there are new ways to earn ExtraBucks Rewards:

> **Extra Pharmacy & Health REWARDS**
>
> - Fill 10 prescriptions, earn $5 Pharmacy & Health ExtraBucks Rewards™.
> - Earn on prescriptions, immunizations and more.
> - Look for more ways to earn throughout the year.
> - Maximize earnings! Family members can join to earn up to $50 Pharmacy & Health ExtraBucks Rewards per person every year.

The Brochure further provides:

> **THE BENEFITS OF JOINING**
> Q: Is there any reason why I can't participate in this program?
>
> A: Everyone can join. (Emphasis supplied.) Rewards cannot be earned for prescriptions purchased in Arkansas, New Jersey or New York; on any prescriptions for controlled substances purchased in Hawaii or Louisiana; or on any prescriptions transferred to a CVS/pharmacy® in Alabama, Mississippi or Oregon.

**i.** The foregoing passage states that CVS CAREMARK intends to supply a discount to any customers fulfilling prescriptions at a CVS/Pharmacy.

**ii.** CVS CAREMARK intended that Medicare recipients receive the brochure and that CVS CAREMARK intended to provide "Prescription Discounts" through its CVS/Pharmacy division to Medicare recipients.

The Brochure further provides:

> **YOUR REWARDS**
> Q: How will I get the rewards I earn?
> A: $5 Pharmacy & Health ExtraBucks Rewards will be issued approximately 1 week after every 10 credits have been earned. Rewards will print on the receipt or at the ExtraCare coupon center That. They're also available on CVS.com®' (You'll need to have or create an online account and attach your ExtraCare card to it.)

**i.** Thus, the Brochure proclaims in bold, large-font, red and blue lettering that CVS/Pharmacy will provide discounts to all customers, and that any customer filling ten prescriptions is entitled to a $5 ExtraBucks Rewards™.

ii. The brochure is designed as an incentive to attract customers to fill prescriptions at a CVS/Pharmacy and the brochure specifically refers to the benefits that recipients can receive under the heading of "extracare pharmacy & health REWARDS™."

iii. There is no disclaimer anywhere in the brochure stating that ExtraBucks Rewards are not available to customers with Medicaid or Medicare coverage.

iv. ExtraBucks Rewards were distributed without regard to the recipient's status as a recipient of federal benefits.

v. CVS CAREMARK, through its CVS/Pharmacy division, indiscriminately displayed and distributed the Brochure on its pharmacy counters to all members of the public.

vi. CVS CAREMARK, through its CVS/Pharmacy division, failed to include any notice on the face of the brochure or on its prescription purchase receipts to indicate to Medicaid or Medicare recipients the need to report the ExtraBucks Rewards to the federal government.

vii. The purchase receipts providing ExtraBucks do not restrict a patron from using the ExtraBucks rewards to purchase prescription drugs, whether with or without a co-pay. Thus, a Medicaid or Medicare recipient was allowed to use the ExtraBucks rewards to purchase a prescription in full and then bill the cost back to Medicaid or Medicare in contravention of the law.

viii. Relator observed that CVS did not monitor and report the transactions involving the ExtraBucks Rewards to ensure that Medicaid or Medicare recipients were not using the ExtraBucks Rewards for cash purchases of prescriptions.

ix. In the course of the purchase of general wares and merchandise at a

CVS/Pharmacy, Defendant used ExtraBucks rewards that, on their face and in practice, remunerated Medicare and Medicaid recipients as an inducement for purchasing prescriptions drugs and without passing that remuneration on to Medicare and Medicaid.

B. CVS/pharmacy ExtraCare pharmacy & health REWARDS Flyer, which CVS Caremark distributed through the U.S. Postal Service to members of the ExtraBucks[®] Rewards program.

The Flyer tells customers:

More ways to earn $5 ExtraBucks[®] Rewards! Along with credit for the prescriptions you fill, you now can earn on vaccinations and CVS.com[®] activities.
Prescriptions Fill or refill a prescription 1 credit Fill or refill a 90-day prescription 3 credits

Vaccinations
Get a flu shot or vaccination from a CVS pharmacist 1 credit GET 10 credits
EARN $5 extrabucks[®] rewards

i.  The Flyer was mailed to CVS/Pharmacy customers without distinction between those who were and those who were not Medicare and/or Medicaid recipients.

ii.  CVS/Pharmacy distributed these types of Flyers beginning no later than March 2013 throughout the United States.

iii.  Like the Brochure detailed above, the Flyer allows Medicaid and/or Medicare recipients to purchase prescriptions in full, awards them ExtraBucks Rewards as described in the Brochure, and then bills the cost of prescriptions and vaccinations back to Medicaid or Medicare in violation of the law.

iv.  The ExtraBucks Rewards constitute remuneration in the form of a cash equivalent that fails to restrict Medicaid and Medicare recipients from using the ExtraBucks rewards to make co-payments.

**v.** Medicare and Medicaid recipients were able to use the ExtraBucks Rewards to purchase a prescription in full without any notice on the face of ExtraBucks Rewards or advertisement of any duty that he or she has to report the discount to Medicare or Medicaid.

vi. CVS/Caremark used ExtraBucks Rewards that, on their face and in practice, remunerated Medicare and Medicaid recipients as an inducement for purchasing prescription drugs without passing that remuneration on to Medicare and Medicaid.

34.     Defendant's corporate policy was to disseminate the above-referenced Brochures, Flyers and ExtraBucks Rewards to all customers regardless of their participation in Medicare or Medicaid.

35.     Defendant CVS CAREMARK, through its CVS Pharmacy division as aforesaid, failed to make any disclaimer on the Brochures, Flyers or ExtraBucks Rewards cash register receipts themselves with respect to their use by Medicare and/or Medicaid recipients, but instead affirmatively offered and supplied the benefits to Medicare and/or Medicaid recipients without reporting the discounts to Medicaid or Medicare.

36.     The cash register receipts from CVS/Pharmacy affording ExtraBucks Rewards as aforesaid did not prevent federal benefits recipients or other customers from using the coupons to pay the full or a portion of the cost of a prescription, or from applying the same for the purchase of general wares and merchandise not eligible for Medicare or Medicaid reimbursement.

37.     Defendant CVS CAREMARK's practices, through its CVS/Pharmacy division, made it possible for Medicare and Medicaid recipients to make cash purchases of prescriptions and also general wares and merchandise with its ExtraBucks Rewards cash register receipts and to also wrongly seek reimbursement from Medicare and Medicaid.  On information and belief, Defendant CVS

CAREMARK did not report such transactions to the federal authorities, and Defendant CVS CAREMARK did not notify customers on the face of the ExtraBucks Rewards cash register receipts of their need to report the discounts to Medicare or Medicaid.

38.     On information and belief, Defendant CVS CAREMARK failed to instruct its employees and pharmacists, in particular, to ensure that such ExtraBucks Rewards were not awarded to Medicare and Medicaid recipients, nor to ensure that Medicare and Medicaid recipients not use ExtraBucks Rewards toward the purchase of prescriptions or general wares and merchandise from its CVS/Pharmacy division.

39.     Defendant CVS CAREMARK's ExtraBucks Rewards and ExtraBucks Rewards cash register receipts were designed to optimize sales and resulted in Medicare and Medicaid recipients obtaining CVS/Pharmacy discounts without proper reporting by Defendant CVS CAREMARK or notice to their customers of their need to report the discounts to the federal government.

## II. CVS CAREMARK PROVIDED DISCOUNTS TO MEDICARE AND/OR MEDICAID RECIPIENTS WITHOUT REPORTING THOSE DISCOUNTS OR NOTIFYING RECIPIENTS OF ANY NEED TO REPORT

40.     In January 2012, Relator purchased insurance under a Prescription Drug Plan from Defendant SILVERSCRIPT.

41.     On June 16, 2013, Relator filled three prescriptions at the CVS/Pharmacy located at 2000 Skokie Valley Rd., Highland Park, IL 60035 and contemporaneously received a receipt stating "ExtraCare Card balances as of 06/08, 1, Quantity Needed to Earn Reward 9."

42.     On July 5, 2013, Relator filled a prescription at the CVS/Pharmacy located at2000 Skokie Valley Rd., Highland Park, IL 60035 and contemporaneously received a receipt stating "ExtraCare Card balances as of 06/08, 4, Quantity Needed to Earn Reward 6."

43.     On July 28, 2013, Relator filled two prescriptions at the CVS/Pharmacy located at 2000 Skokie Valley Rd., Highland Park, IL 60035 and contemporaneously received a cash register receipt stating "ExtraCare Card balances as of 07/15, 8, Quantity Needed to Earn Reward 2," at the bottom of which cash register receipt was printed a $5 ExtraBucks Reward that Relator used for the purchase of general wares and merchandise at said CVS/Pharmacy.

44.     There are numerous recipients of federal and state health care benefits who received the benefit of the CVS/Caremark ExtraBucks Rewards despite the presence or absence of any disclaimers on the face thereof denying their entitlement to such Rewards.

45.     Defendants CVS Caremark together with defendant SILVERSCRIPT conspired to entice beneficiaries of the federal and state Medicare and Medicaid programs to fill prescriptions at said Defendants with the intention of charging the full cost of said prescriptions to the federal and state governments at the full price thereof, as evidenced by reports for next to Plan, for example, the payment by the federal government under the Medicare Coverage Gap Discount Program in November, 2013 of $59.85, contemporaneous with Plaintiff's supplemental insurance plan's payment of $279.28 and Plaintiff's payment of $59.84, without discount or allowance for the value of the discount coupons provided by Defendants to Plaintiff on account of the fulfillment of such prescription.

COUNT I
FALSE CLAIMS ACT — CONSPIRACY

46.     Relator incorporates by reference Paragraphs 1 through 45 of the Complaint.

47.     Defendant CVS CAREMARK, together with defendant SILVERSCRIPT, and their employees and other persons or entities known or unknown, conspired to defraud the United States and the State of Illinois governments by agreeing to present false or fraudulent claims for payment or approval by the United States and the State of Illinois governments,

which claims were false or fraudulent by virtue of Defendant's, and the coconspirators', violation of the Anti-kickback Statute and the CMPL contrary to Defendant's simultaneous certification, or implied certification, to the United States government and the State of Illinois that Defendant was in compliance with the Medicare and Medicaid laws, the Anti-kickback Statute, the CMPL, and other federal and state health care laws. See 31 U.S.C. § 3729(a)(3).

48.     The United States government and the State of Illinois were unaware of Defendants' improper and illegal conduct and made full payment on or approved the false or fraudulent claims, which resulted in damage in an amount to be determined.

COUNT II
FALSE CLAIMS ACT — PRESENTATION OF FALSE CLAIMS

49.     Relator incorporates by reference Paragraphs 1 through 48 of the Complaint.

50.     Defendant CVS CAREMARK knowingly presented or caused to be presented to the United States and State of Illinois governments false or fraudulent claims for payment or approval, which claims were false or fraudulent by virtue of Defendant's violation of the Anti-kickback Statute and the CMPL contrary to Defendant's simultaneous certification, or implied certification, to the United States and State of Illinois governments that Defendant was in compliance with the Medicare and Medicaid laws, the Anti-kickback Statute, the CMPL, and other federal and state health care laws. See 31 U.S.C. § 3729(a)(1).

51.     The United States government and the State of Illinois were unaware of Defendant CVS CAREMARK's improper and illegal conduct and made full payment on or approved the false or fraudulent claims, which resulted in damage in an amount to be determined.

COUNT III
FALSE CLAIMS ACT — FALSE RECORD OR STATEMENT

52.     Relator incorporates by reference Paragraphs 1 through 51 of the Complaint.

**14**

53.     Defendant CVS CAREMARK knowingly made, used, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the United States and State of Illinois governments, which claims were false or fraudulent by virtue of Defendant's violation of the Anti-kickback Statute and the CMPL contrary to Defendant's simultaneous certification, or implied certification, to the United States and State of Illinois governments that Defendant was in compliance with the Medicare and Medicaid laws, the Anti-kickback Statute, the CMPL, and other federal and state health care laws. See 31 U.S.C. § 3729(a)(2).

54.     The United States government and the State of Illinois were unaware of Defendant CVS CAREMARK's improper and illegal conduct and made full payment on or approved the false or fraudulent claims, which resulted in damage in an amount to be determined.

<u>COUNT IV</u>
<u>VIOLATIONS OF THE ANTI-KICKBACK STATUTE</u>
<u>AND THE CIVIL MONETARY PENALTIES LAW</u>

55.     Relator incorporates by reference Paragraphs 1 through 54 of the Complaint.

56.     The provisions of 42 U.S.C. § 1320a-7b(b)(1)-(3), commonly known as the Anti-kickback Statute, provide in relevant part as follows:

(b) Illegal remunerations
* * * * *
(2) whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—
    **(A)** to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or
    **(B)** to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program, shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

15

(3) Paragraphs (1) and (2) shall not apply to—

    (A) a discount or other reduction in price obtained by a provider of services or other entity under a Federal health care program if the reduction in price is properly disclosed and appropriately reflected in the costs claimed or charges made by the provider or entity under a Federal health care program;

    (E) any payment practice specified by the Secretary in regulations promulgated pursuant to section 14(a) of the Medicare and Medicaid Patient and Program Protection Act of 1987;

57.    The provisions of 42 U.S.C. § 1320a-7 provides for the exclusion of individuals and entities from participation in any Federal health care program, and states in relevant part as follows:

(b) Permissive exclusion
The Secretary may exclude the following individuals and entities from participation in any Federal health care program (as defined in section 1320a-7b(f) of this title):
    (7) Fraud, kickbacks, and other prohibited activities
        Any individual or entity that the Secretary determines has committed an act which is described in section 1320a-7a, 1320a-7b, or 1320a-8 of this title.

58.    In short, an individual or entity is subject to the penalties of the Anti-kickback Statute and to exclusion from participation in any Federal health care program when that individual or entity knowingly and willfully offers or pays any remuneration, which includes kickbacks, bribes, or rebates, either directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a federal health care program. See 42 U.S.C. §§ 1320a7b(b)(2)(b) and 1320a-7(b)(7).

59.    The provisions of 42 U.S.C. § 1320a-7a, which provisions are known as the Civil Monetary Penalties Law (sometimes, "CMPL"), provide in relevant part as follows:

(a) Improperly filed claims
Any person (including an organization, agency, or other entity, but excluding a beneficiary, as defined in subsection (i)(5) of this section) that—

(1) knowingly presents or causes to be presented to an officer, employee, or agent of the United States, or of any department or agency thereof, or of any State agency (as

defined in subsection (i)(1) of this section), a claim (as defined in subsection (i)(2) of this section) that the Secretary determines-

(B) is for a medical or other item or service and the person knows or should know the claim is false or fraudulent,

         **\* \* \* \***

(5) offers to or transfers remuneration to any individual eligible for benefits under subchapter XVIII of this chapter, or under a State health care program (as defined in section 1320a-7(h) of this title) that such person knows or should know is likely to influence such individual to order or receive from a particular provider, practitioner, or supplier any item or service for which payment may be made, in whole or in part, under subchapter XVIII of this chapter, or a State health care program (as so defined);

         **\* \* \* \***

(7) commits an act described in paragraph (1) or (2) of section 1320a-7b(b) of this title; shall be subject, in addition to any other penalties that may be prescribed by law, to a civil money penalty of not more than $10,000 for each item or service (or, in cases under paragraph (3), $15,000 for each individual with respect to whom false or misleading information was given; in cases under paragraph (4), $10,000 for each day the prohibited relationship occurs; or in cases under paragraph (7), $50,000 for each such act). In addition, such a person shall be subject to an assessment of not more than 3 times the amount claimed for each such item or service in lieu of damages sustained by the United States or a State agency because of such claim (or, in cases under paragraph (7), damages of not more than 3 times the total amount of remuneration offered, paid, solicited, or received, without regard to whether a portion of such remuneration was offered, paid, solicited, or received for a lawful purpose). In addition the Secretary may make a determination in the same proceeding to exclude the person from participation in the Federal health care programs (as defined in section 1320a-7b(f)(1) of this title) and to direct the appropriate State agency to exclude the person from participation in any State health care program.

    60.    In short, an individual or entity, excluding a federal health care program beneficiary, is subject to the penalties and assessments of the CMPL and to exclusion from participation in any federal health care program when that individual or entity (1) knowingly presents or causes to be presented to the United States government a claim for an item or service and the person knows or should know the claim is false or fraudulent; (2) offers to or transfers remuneration to a federal health care program beneficiary that the offeror/transferor knows or should know is likely to influence the beneficiary to order or receive "from a particular provider, practitioner or supplier" [emphasis added] any item or service for which payment is made in whole or part under a federal or state health care program; or (3) commits a violation of the Anti-kickback Statute. See 42 U.S.C. §§ 1320a7a(a)(1)(B), (a)(5), (a)(7), and 1320a-7(b)(7).

61.     Defendant CVS CAREMARK is also liable under the CMPL for actions of its agent-employees committed within the scope of the agency or employment. See 42 U.S.C. § 1320a-7a(1).

62.     On information and belief, as required by law, Defendant CVS CAREMARK expressly certified to the government that Defendant was in compliance with all federal health care law, which includes the Anti-Kickback Statute and CMPL, and relied upon that certification to obtain reimbursement from Medicare, Medicaid, and other federal health care programs for goods, facilities, services, or items provided to one or more federal health care beneficiaries.

63.     Defendant CVS CAREMARK also implicitly certified to the government that Defendant was in compliance with all federal health care law's, including the Anti-Kickback Statute and the CMPL, and used such certification to obtain reimbursement from Medicare, Medicaid, and other federal health care programs for goods, facilities, services, or items provided to one or more federal health care beneficiaries.

64.     As set forth in the preceding paragraphs, including the General Allegations, supra, Defendant CVS CAREMARK, by and through its CVS/Pharmacy division, offered to pay and/or did pay remuneration, including ExtraBucks Rewards certificates , to induce beneficiaries of Medicare, Medicaid, and other federal and state health care programs to purchase or order prescriptions from Defendant CVS CAREMARK.

65.     Defendant CVS CAREMARK, by and through its CVS/Pharmacy division, failed to reflect these discounts in the claims or charges for reimbursement that it made to Medicare, Medicaid, and other federal and state health care programs by and through its subsidiary, SILVERSCRIPT, and other insurance companies.

66.     Instead of passing on the above discounts to Medicare, Medicaid, and other federal and state health care programs, Defendant CVS CAREMARK, by and through its

CVS/Pharmacy division, provided the remuneration directly to the federal and state health care program beneficiaries.

67.     Defendant also used the remuneration as incentive for federal and state health care beneficiaries to obtain prescriptions from its CVS/Pharmacy division, in particular.

68.     Despite withholding the existence of the discounts from the federal and state health care programs, Defendant CVS CAREMARK, by and through its subsidiary, Defendant SILVERSCRIPT, and other insurance companies, claimed reimbursement from Medicare, Medicaid, and other federal and state health care programs in the full amount of the good, service, or item provided while contemporaneously certifying, both explicitly and implicitly, that Defendant CVS CAREMARK was in compliance with all federal and state health care laws, including the Anti-kickback Statute and the CMPL.

69.     Defendant CVS CAREMARK performed the above illegal and improper acts through its CVS/Pharmacy division, and also directed its and their agents and employees to commit the same illegal and improper acts in the course of, and within the scope of, their employment.

70.     If the United States government had been aware of Defendant' CVS CAREMARK s improper and illegal conduct as aforesaid, including the false certifications, the government would not have made payment on or approved Defendant CVS CAREMARK's claims through CVS/Pharmacy for reimbursement under Medicare, Medicaid, and other federal or state health care programs.

71.     By agreement and by law, Defendants CVS CAREMARK and SILVERSCRIPT were required to comply with all Federal health care law, which includes the Anti-Kickback Statute, the CMPL, and the rules and regulations of Medicare, Medicaid, and the United States Department of Health and Human Services. Defendants acted with actual knowledge, deliberate ignorance, and/or reckless disregard in submitting false or fraudulent claims to the government

and in providing remuneration to influence federal or state health care beneficiaries to order or receive goods from a particular supplier.

72.     As a result of Defendant CVS CAREMARK's false and fraudulent certifications and claims for reimbursement, and defendant SILVERSCRIPT's complicity in those instances where customers were insured by SILVERSCRIPT, Defendants have violated the False Claims Act, the Illinois Medicaid False Claims Act and caused the United States government to suffer damages.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Relator, on behalf of himself and of the United States and the State of Illinois, requests judgment as follows:

**A.**     The United States and the State of Illinois are entitled to reimbursement of the funds obtained by Defendants as a result of fraudulent claims submitted to the United States and the State of Illinois.

**B.**     The United States is entitled to a civil penalty of $5,500 to $11,000, adjusted for inflation, for each false or fraudulent claim plus 3 times the damages sustained by the United States as a result of each such false or fraudulent claim. See 31 U.S.C. § 3729(a); 28 C.F.R. 85.3(aX9).

**C.**     The United States is entitled to a civil monetary penalty of $10,000 to $50,000 for each violation of the CMPL or the Anti-kickback Statute, plus an assessment of not more than three times the amount of each false or fraudulent claim without regard to damages actually sustained by the United States. See 42 U.S.C. § 1320a-7a(a).

**D.**     The United States is entitled to exclude Defendants from participation in any federal health care program. See 42 U.S.C. § 1320a-7(b)(7).

**E.**     Relator, Richard J. Carmel, is entitled to an amount for reasonable expenses necessarily incurred, plus reasonable attorneys' fees and costs. See 31 U.S.C. § 3730(d).

**F.**     Relator, Richard J. Carmel, is entitled to an order of partial distribution of the damages, penalties, assessments, and other relief awarded to the United States in an amount equivalent

to a percentage of the entire recovery as set forth in 31 U.S.C. § 3730(d); such percentage distribution is in addition to Relator's recovery of expenses, attorneys' fees, and costs.

## **JURY DEMAND**

Plaintiff demands trial by jury on all issues so triable.

Dated: January 21, 2015                                  Respectfully submitted,

                                                                        By: Terence Buehler

                                                                        /s/Terrence Buehler

                                                                        Touhy, Touhy & Buehler, LLP
                                                                        55 West Wacker Dr., 14th floor Chicago,
                                                                        IL 60601
                                                                        312-372-2209

                                                                        Vincent DiTommaso
                                                                        Peter Lubin
                                                                        DiTommaso-Lubin P.C.
                                                                        The Oak Brook Terrace Atrium
                                                                        17W220 22d Street, Suite 200
                                                                        Oak Brook Terrace, IL 60181
                                                                        *Attorneys for Plaintiff-Relator*