IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Richard J. Carmel | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case Nos. 13 C 5930 |
| | ) | 13 C 7683 |
| | ) | |
| CVS Caremark Corporation, et. al | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

MEMORANDUM OPINION AND ORDER

In these related *qui tam* actions, relator Richard J. Carmel alleges that CVS Caremark Corporation—a pharmacy and healthcare services provider—and its affiliates violated, and conspired to violate, the federal False Claims Act, 31 U.S.C. § 3730 ("FCA"), and the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) ("AKS"), through certain discount programs they offered to CVS pharmacy customers.[1] Relator claims that these programs violated the AKS by incentivizing customers covered by Medicare and/or Medicaid to purchase prescription drugs at CVS, and by remunerating such customers through price reductions that were neither disclosed

---

[1] Relator's complaints also asserted claims under the Civil Monetary Penalties Law ("CMPL"), but he later withdrew those claims.

nor passed on to these federal programs. Defendants violated the FCA, relator asserts, by presenting claims for payment that falsely certified compliance with the AKS, and by making or using false records for the purpose of seeking payment of false or fraudulent claims.

Defendants articulate multiple grounds for dismissing relator's claims under Fed. R. Civ. P. 12(b)(6), several of which appear to have merit, and some of which relator concedes.[2] But because I conclude that under the law of this circuit, the FCA's "public disclosure" bar compels dismissal of both actions for lack of subject matter jurisdiction, I begin and end with that issue.

I.

The FCA is "the primary vehicle by the Government for recouping losses suffered through fraud." *U.S. v. Sanford-Brown, Ltd.*, ---F.3d---, 2015 WL 3541422, at *4 (7th Cir. 2015) (quoting 31 U.S.C. § 3729 et seq.). It authorizes, in addition

---

[2] Relator withdrew his CMPL claims in his response briefs, and he further acknowledged that he has no free-standing claim under the AKS. In addition, relator did not respond to defendants' arguments for dismissing the conspiracy count he asserts in Count I, or for dismissing certain defendants from these actions. I construe his silence as a concession that his conspiracy claim, and defendants Long Drug Stores and Silverscript Insurance Company, should be dismissed. *See Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999); *Count of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006).

2

to actions by the Attorney General, *qui tam* suits by private citizens ("relators") to recover money the government paid based on false or fraudulent claims. *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 912 (7th Cir. 2009). If the *qui tam* action is successful, the relator is entitled to a "substantial share" of the funds recovered. *Id.*

To ensure that *qui tam* suits are brought by individuals having "*first-hand* knowledge of fraudulent misconduct," *id.* at 918 (original emphasis), rather than by "opportunists trying to capitalize on publicly disclosed allegations of wrongdoing," *id.* at 915, the FCA includes a public disclosure bar, which requires courts to dismiss *qui tam* actions:

> if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—
>
> ...
>
> (iii) from the news media
>
> ...
>
> unless...the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(a)(2010).

To determine whether this bar applies, courts in this circuit apply a three-step analysis, asking: 1) whether the relator's allegations have been "publicly disclosed"; 2) whether the lawsuit is "substantially similar to" the publicly disclosed

3

information; and, if so, 3) whether the relator is nevertheless an "original source" of the information. *Glaser*, 570 F.3d at 913. The Seventh Circuit has explained that the public disclosure bar applies not only where an allegation of fraud has already been made, but also where the "facts disclosing the fraud itself are in the government's possession or the public domain." *U.S. ex rel. Absher v. Momence Meadows Nursing Center, Inc.*, 764 F.3d 699, 708 (7th Cir. 2014).

## II.

Relator's complaints challenge several discount programs offered to CVS customers. The first is CVS pharmacy's "ExtraBucks" rewards program, which provides customers "with single 'points' for each prescription filled, and then provid[es] customers a five dollar discount coupon for each 10 prescriptions filled or refilled, for use in purchase of goods, wares and merchandise" at CVS stores. Complaint in 13 C 5930 ("5930 Cmplt.") at ¶ 17. In this connection, relator describes a "brochure" CVS Caremark distributed, which was captioned, "**Extra pharmacy & Health REWARDS**" and included the following language:

- Fill 10 prescriptions, earn $5 Pharmacy & Health ExtraBucks Rewards$^{TM}$.
- Earn on prescriptions, immunizations and more.
- Look for more ways to earn throughout the year.
- Maximize earnings! Family members can join to earn up to $50 Pharmacy & Health ExtraBucks Rewards per person every year.

4

5930 Cmplt. at ¶ 36 (A). The brochure stated, "Everyone can join" and was designed, relator claims, "as an incentive to attract customers to fill prescriptions at a CVS/Pharmacy." The brochure did not include any disclaimer stating that rewards were not available to customers covered by Medicaid and/or Medicare. *Id*. Relator also alleges that CVS Caremark "distributed discount coupons that on their faces did not restrict Medicare and Medicaid recipients from gaining the benefit of a coupon at the expense of Medicare and Medicaid." *Id*. at ¶ 23.

Relator next describes a "flyer" CVS Caremark sent to members of the ExtraBucks Rewards program, which states:

> More ways to earn $5 ExtraBucks® Rewards! Along with credit for the prescriptions you fill, you now can earn on vaccinations and CVS.com® activities.
> **Prescriptions** Fill or refill a prescription 1 credit
> Fill or refill a 90-day prescription 3 credits
> ...
> **Vaccinations**
> Get a flu shot or vaccination from a CVS pharmacist 1 credit
> GET 10 credits
> EARN $5 ExtraBucks® Rewards

*Id*. at ¶ 36 (B). These flyers were distributed through the mail, without regard for whether the addressees were Medicare or Medicaid recipients. *Id*. at ¶ 36 (B)(i). Relator alleges that CVS Caremark "used ExtraBucks Rewards that, on their face and in practice, remunerated Medicare and Medicaid recipients as an

inducement for purchasing prescription drugs without passing that remuneration on to Medicare and Medicaid," *id*. at ¶ 36 (B)(vi), and that CVS Caremark did not "report[] the discounts to Medicaid or Medicare." *Id*. at ¶ 38.

Relator states that on June 16, 2013, July 5, 2013, and July 28, 2013, he purchased prescriptions at a CVS pharmacy in Highland Park, Illinois, and that with each purchase, he received a receipt reflecting his "ExtraCare Card balances." The last of these included a $5 ExtraBucks Reward that relator used to purchase general merchandise at the pharmacy. *Id*. at ¶¶ 45-47.

In the second action, relator alleges that CVS customers who got flu shots at CVS pharmacies received a flyer stating:

> I got my
> Flu Shot!
>
> Shopping Pass
>
> 20% Off
>
> Non-pharmacy purchases*
> up to $100 with your ExtraCare card
>
> Save 20%
>
> On your non-pharmacy
> purchases up to $100
> with your ExtraCare card
>
> Valid one time only 8/19/13-3/31/14.

Complaint in 13 C 7683 ("7683 Cmplt.") at ¶ 33. Relator states that these flyers "proclaim[ed] in bold, large-font, colored

6

lettering that CVS PHARMACY will provide discounts to all customers," and "were distributed without regard to the recipient's status as a recipient of federal benefits." *Id.* at ¶ 33(iii), (vi). He further alleges that "a Medicaid or Medicare recipient was allowed to purchase inoculation medical services at full price and then bill the cost back to Medicaid or Medicare in contravention of the law." *Id*. at ¶ 33 (ix).

Relator states that on October 7, 2013, he purchased a flu shot at a CVS pharmacy in Highland Park, Illinois, and contemporaneously received the discount coupon described above.

Relator's two actions assert identical claims for relief. Counts I and IV are no longer at issue, as relator has either withdrawn them or has failed to respond to defendants' arguments for dismissal. *See* n. 2, *supra*. Counts II and III assert, respectively, the presentation of false claims, and the knowing creation and use of false records or statements for the purpose of seeking claim payment from the federal and Illinois governments.[3]

---

[3] Both complaints also contain a Count IV, captioned "Violations of the Anti-Kickback Statute and the Civil Monetary Penalities Law." As noted previously, relator has withdrawn his CMPL claim and has conceded that he has no free-standing claim under the AKS, which indeed authorizes no private right of action. Accordingly, to the extent any substance remains to Count IV, it is duplicative of Counts II and III.

III.

Whether relator's claims—which, for all that appears, are grounded in facts sourced entirely from a brochure, two flyers, and a sales receipt—are prohibited by the public disclosure bar is not a particularly close question. The more difficult question is whether the bar operates to deprive me of subject matter jurisdiction, or whether, it presents, instead, a ground for dismissal for failure to state a claim. Defendants evidently believe it is the latter, as they brought their motion pursuant to Rule 12(b)(6). As explained below, however, the issue is not so clear.

The FCA's public disclosure bar was amended in 2010 by The Patient Protection and Affordable Care Act. Prior to this amendment, the bar was explicitly jurisdictional in nature, providing:

> No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

§ 3730(e)(4)(1986). The Supreme Court confirmed, in *Rockwell Intern. Corp. v. U.S.*, 549 U.S. 457 (2007), that the word "jurisdiction" in this section connoted subject-matter jurisdiction. *Id.* at 467. The 2010 version, however, which

8

governs this case because the complaints were filed in 2013 and do not allege any fraudulent conduct prior to that year, omits the word "jurisdiction," and instead provides that the court "shall dismiss an action" if its substantially the same allegations have been publicly disclosed. 31 U.S.C. § 3703(e)(4)(2010).

The Seventh Circuit has observed that in view of the 2010 amendment, "it is no longer clear that *Rockwell*'s holding is still good law." *U.S. ex rel. Absher v. Momence Meadows Nursing Center, Inc.*, 764 F.3d 699, 706 (7th Cir. 2014) (declining to reach whether the bar remains jurisdictional because the case before it was governed by the pre-amendment version). Indeed, the Fourth and Eleventh Circuits have expressly held that the current public disclosure bar is not jurisdictional. *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 810 (11th Cir. 2015) ("[w]e conclude that the amended § 3730(e)(4) creates grounds for dismissal for failure to state a claim rather than for lack of jurisdiction."); *U.S. ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 916 (4th Cir. 2013) ("the public-disclosure bar is no longer a jurisdiction-removing provision."). These cases articulate compelling reasons for this conclusion, including that Congress elected to delete the explicit reference to jurisdiction from § 3730(e)(4), while leaving similar jurisdiction-stripping language intact in surrounding sections,

*May*, 737 F.3d at 916, and that the amended version provides that the court "shall dismiss" the action "unless opposed by the Government," which is inconsistent with a jurisdictional construction since jurisdictional bases for dismissal cannot be waived. *Id.* at 917. *See also Osheroff*, 776 F.3d at 810-11 (same).

Earlier this month, however, the Seventh Circuit stated squarely, in a case expressly applying the 2010 version of the statute ("the 2010 version of § 3730(e)(4) is not retroactive and it controls here"), that "the public disclosure bar is a limitation on subject matter jurisdiction." *Sanford-Brown*, ---F.3d.---, 2015 WL 3541422, at *4 (7th Cir. 2015). The court relied for this holding on *Momence*, however, which, as noted above, applied the pre-2010 version of the statute and questioned whether the public disclosure bar remained jurisdictional as amended. Nevertheless, because I am bound by the court's ruling in *Sanford-Brown,* I conclude that I must continue to view the public disclosure bar as jurisdictional in nature, regardless of how other courts of appeals characterize it or how the parties have framed the argument. *See Ricketts v. Midwest Nat. Bank*, 874 F.2d 1181 (7th Cir. 1989) ("a district court's obligation to review its own jurisdiction is a matter that must be raised sua sponte, and it exists independent of the 'defenses' a party might either make or waive under the Federal

10

Rules."). Accordingly, I must address § 3730(e)(4) before reaching the merits of the parties' remaining arguments, and must dismiss the case without resolving their additional disputes if I determine that the bar applies.

Turning now to the substance of the issue, defendants argue that relator's claims were "publicly disclosed" because the allegations in his complaint were widely available, including in a CVS press release, magazine articles, and the CVS website. Relator does not dispute that these sources fall within the category of "news media" (nor does he dispute that I may consider them for present purposes; see *Osheroff*, 776 F.3d at 812 n. 4). Indeed, relator's allegations about CVS's discount programs quote from sources he acknowledges were widely disseminated. Accordingly, I move on to step two of the analysis, which asks if relator's allegations are "substantially similar" to the publicly disclosed information.

I begin by observing that in *Glaser*, the Seventh Circuit aligned its views with the majority of other circuits, which had held that the substantial similarity standard was "intended to be a quick trigger for the more exacting original source analysis." 570 F.3d at 920 (citing *United States ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1051 (10th Cir. 2004)). *Glaser* explained that satisfying the standard does not require an identity of allegations, and that "an FCA qui tam

action even partly based on publicly disclosed allegations or transactions is nonetheless 'based upon' such allegations or transactions." *Id.*

In his response briefs, relator summarizes the fraudulent conduct alleged in his complaints as "offering the $20 Coupon to Medicare and Medicaid recipients" (i.e., the %20 off coupon), and "offering the 'Free CVS money' to Medicare and Medicaid recipients" (the $5 ExtraBucks Reward). By relator's own account, however, both offers were in the public domain and stated "on their face" that they were available to "everyone."

Relator further argues that his allegations are not substantially similar to publicly disclosed information because the brochures, flyers, and other public documents did not reveal, for example, that "CVS failed to disclose the ExtraBucks Rewards to Medicare or Medicaid and failed to disclose to Medicare or Medicaid recipients that they had an obligation to report the rewards," and that "CVS failed to monitor or create a monitoring process to ensure that Medicare or Medicaid recipients did not receive the ExtraBucks reward." 5930 Cmplt. at 9. But the public disclosure bar applies when the "critical elements" of the alleged fraud are in the public domain; every fact on which a relator's claims are based need not have been disclosed. *See Glaser*, 570 F.3d at 913. *See also U.S. ex rel. Davis v. District of Columbia*, 679 F.3d 832, 836 (D.C. Cir.

12

2012) (public disclosure bar triggered "when the government already has enough information to investigate the case and to make a decision whether to prosecute or where the information could at least have alerted law-enforcement authorities to the likelihood of wrongdoing.") (internal quotation marks and citation omitted). Moreover, if the omitted allegations are indeed "critical elements" of the alleged fraud, then relator's speculation about what CVS disclosed to Medicare or Medicaid, and about how CVS monitored its rewards programs, fall far short of Rule 9(b)'s particularity requirements. The basis for these allegations is a mystery; they appear to be sheer conjecture.[4]

This brings me to the final step in the analysis, which is to determine whether relator is an "original source" of the information on which his claims are based. The 2010 version of the FCA defines "original source" as an individual:

> who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has

---

[4] While my conclusion that I lack jurisdiction over this action precludes me from ruling on the merits of defendants' remaining arguments for dismissal, I note that relator's failure to allege the content, date, amount, or any other identifying feature of even a single claim for payment alleged to contain a false certification of compliance or other false statement undoubtedly dooms his claims under *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009), the very authority on which he purports to rely.

> voluntarily provided the information to the Government
> before filing an action under this section.

§ 3730(e)(4)(B)(2010). Relator does not claim to satisfy the requirements of the first subsection. As for the second, as just noted, the knowledge relator claims to possess that is "independent of" and "materially adds" to the public disclosure is entirely speculative.

Relator "has the burden of proving the jurisdictional facts," *Glaser*, 570 F.3d at 922, yet neither his complaints, nor his opposition briefs, identify the source of any information he claims to have obtained "independently" of the public disclosures. Relator does not claim to be an "insider" with special knowledge of CVS's billing practices or the administration of its customer rewards programs. Nor does he claim to have seen any document, spoken to any person, or otherwise been privy to any information that was not in the public domain. A relator who declines to identify the source of his information cannot establish that his putative knowledge is "independent" of the public disclosures. *See id.* at 921-922 (relator who claimed her attorney provided her information about the alleged fraud but refused to disclose how the attorney learned of it could not establish her independent knowledge). In sum, relator has not carried his burden of proving that he is

an "original source" of the information on which his claims are based.

IV.

For the foregoing reasons, I conclude that relator's actions are barred by § 3730(e)(4) and dismiss this case for lack of jurisdiction. Before closing, however, I note briefly that while I believe *U.S. v. Sanford-Brown, Ltd*., ---F.3d---, 2015 WL 3541422 (7th Cir. 2015) binds me to the view that the issue is jurisdictional, my outcome would have been the same if I had viewed it through the lens of Rule 12(b)(6), which is, indeed, how the parties framed it.

As noted above, the only source of information relator cites for his allegations about CVS's discount programs is the printed materials touting that "everyone can join." That relator may have "observed" CVS acting *consistently* with this statement (by failing to exclude Medicare or Medicaid recipients from the programs) adds nothing material to the publicly disclosed information.[5] Moreover, relator effectively pleads himself out of any argument that the alleged fraud depends on

---

[5] This distinguishes the allegations here from those in *U.S. ex rel. Yarberry v. Sears Holdings Corp*., No. 09-cv-588-MJR-PMF (S.D. Ill. Nov. 20, 2013), where the coupons at issue facially *excluded* Medicare and Medicaid recipients, and the relator claimed to have knowledge of the defendant's "covert policy and practice of ignoring" their ineligibility. *Yarberry*, 2013 U.S. Lexis 44266, at *23.

15

non-public information he claims uniquely to possess with the allegation: "CVS/Caremark used ExtraBucks Rewards that, *on their face and in practice, remunerated Medicare and Medicaid recipients as an inducement for purchasing prescription drugs....*" 5930 Cmplt. at ¶ 36 (B)(vi) (emphasis added).[6] Accordingly, even if the Seventh Circuit reconsidered its statement that even after the FCA's 2010 amendment, "the public disclosure bar is a limitation on subject matter jurisdiction," dismissal of these cases would still be appropriate under Rule 12(b)(6).

**ENTER ORDER:**

_Elaine E. Bucklo_
_____

**Elaine E. Bucklo**
United States District Judge

Dated: June 26, 2015

---

[6] True, this allegation continues, "...without passing that remuneration on to Medicare and Medicaid." But since relator does not assert any knowledge of how CVS/Caremark bills Medicare or Medicaid, this is pure speculation.

16